Henry **DITTMER**, et al., Plaintiffs,

v.

**COUNTY OF SUFFOLK, Town of Riverhead, Town of Southampton, Town of Brookhaven, Central Pine Barrens Joint Planning and Policy Commission, Robert J. Geffney, Ray E. Cowen, Vincent Connuscio, Felix Grucci, and James Stack, Defendants.**

No. 96 CV 2206 (TCP).

United States District Court, E.D. New York.

Aug. 3, 1997.

John J. O'Connell, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for Plaintiffs.

John J. Sipos, State of New York Office of Attorney General, Assistant Attorney General, New York State Department of Law, Albany, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants move to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis of the abstention doctrine. Defendants also move to dismiss plaintiffs' due process, equal protection, takings, and 42 U.S.C. § 1983 claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

Plaintiffs' Second Amended Complaint seeks a declaratory judgment that the New York Pine Barrens Protection Act ("the Act"), legislation establishing a comprehensive land use planning and regulatory framework for the Long Island Central Pine Barrens area ("the Area"), is unconstitutional on its face. Plaintiffs seek to enjoin defendants from implementing the Act.

Prior to the Act's passage, the New York State Court of Appeals recognized both the importance of the Area and the need for comprehensive planning to ensure its protection. *See Long Isl. Pine Barrens Soc'y, Inc. v. Planning Bd. of the Town of Brookhaven,* 80 N.Y.2d 500, 591 N.Y.S.2d 982, 988–89, 606 N.E.2d 1373, 1379–80 (1992) (noting that "an exhaustive and thorough approach to evaluating projects affecting [the Area] is unquestionably desirable and, indeed, may well be essential to its preservation"). Prior efforts to protect the Area have been extensive, but the Act represents the first comprehensive

culmination of such efforts. The Act has two central goals: (1) to preserve the ecosystem for future generations; and (2) to protect the aquifer underlying the Area that is the sole drinking water supply for Long Island's 2.5 million inhabitants.

The Act divides the Area into a Core Preservation Area ("Core Area") and a Compatible Growth Area. Plaintiffs are landowners in the Core Area.

The Act provides for establishment of a Planning Commission charged with preparation of a plan designed to attain the Act's purposes. The Commission prepared such a plan ("the Plan"), which was signed by Governor Pataki on 28 June 1995 and ratified by the affected towns and county. The Commission is further charged with reviewing permit applications for development within the Area, granting variances by majority vote, and establishing a "Development Rights Bank" to determine values and set standards for purchase, sale, ownership, and transfer of development rights. The Act specifically provides for State court review of any final determination made pursuant to the Act.

An attack on the Act and the Plan in State court has been proceeding for several years. As in the present action, the Complaint in that proceeding—filed 15 September 1994—sets forth equal protection, due process, and takings claims challenging the validity of the Act and Plan. The parties to that case, *WJF Realty and Reed Rubin v. State of New York et al.*, Supreme Court, Suffolk County, No. 94 22784, have been actively litigating a converted motion to dismiss since 7 December 1994, including the filing of numerous memoranda and supporting materials over the last two years. As in the instant action, the plaintiffs in that action are landowners in the Core Area.

### DISCUSSION

Defendants argue that the Court must abstain in light of the extensive litigation that has taken place on essentially the same question in State court. In something of a shotgun approach, they urge the Court to abstain under each of the classical doctrines enunciated by the Supreme Court in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S.

496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) *Burford v. Sun Oil Co., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Colorado River Water Conserv. Dist. v. United States*. After a careful review of each of those and subsequent decisions, the Court has concluded that only the *Burford* and *Colorado River* abstention doctrines are applicable in the instant case.

■ All abstention arguments must be analyzed against the general principle that federal courts have a "virtually unflagging obligation" to exercise jurisdiction, "even if an action concerning the same matter is pending in state court." *Sheerbonnet, Ltd. v. American Express Bank Ltd.*, 17 F.3d 46, 49 (2d Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994) (reversing decision to abstain under *Burford* because tort claims at issue had no specific bearing on underlying State liquidation proceedings).

### I. Burford Abstention

■ The Supreme Court in *Burford* directed federal courts to abstain from interfering with specialized, ongoing state regulatory schemes that involve important state and local interests. *Burford v. Sun Oil Co.*, 319 U.S. 315, 333–34, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943). Under *Burford*, a federal court must abstain where an alternative State forum is available and where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989); *see also Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31, 36 (2d Cir.1988) (noting that *Burford* abstention appropriate to avoid federal interference with "specialized ongoing state regulatory schemes").

■ The *Burford* Court considered the following factors to determine whether abstention was appropriate in that case: the complexity of the state scheme; provision of a system of review by state courts; the potential for misunderstanding or conflict with state law or policy; and the ability to consid-

er federal claims in state proceedings and to preserve those claims by appeal to the Supreme Court. *Burford,* 319 U.S. at 318–34, 63 S.Ct. at 1099–1108. The Second Circuit adopted a refinement of those factors in *Bethphage Lutheran Serv., Inc. v. Weicker,* 965 F.2d 1239 (2d Cir.1992), analyzing the abstention question in light of "the degree of specificity of the state regulatory scheme, the necessity of discretionary interpretation of state statutes, and whether the subject matter of the litigation is traditionally one of state concern." *Bethphage,* 965 F.2d at 1243; *see Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 127 (2d Cir. 1995) (adopting same factors). The court in *Bethphage* also noted the significance, if relevant, of a scheme's provision of a system for state judicial review that would allow state courts to develop specialized knowledge of the scheme and associated controversies. *Bethphage,* 965 F.2d at 1245.

As in *Burford,* at issue here is a "general regulatory system devised for the conservation" of a critical and geographically extensive natural resource. *Burford,* 319 U.S. at 318, 63 S.Ct. at 1099. The Act and ensuing Plan, which provide for geographical division and continuing detailed management of that resource, is extraordinarily specialized. In sum, the Plan is designed not only to delineate land management practices to protect the aquifer underlying the Area and set water quality protection protocols, but to provide for the acquisition and regulation of land interests while promoting compatible uses and permitting or preventing incompatible uses. The State legislature and various interested parties have labored for years to develop the scheme embodied in the Plan. The extensive litigation in State court to date underscores the difficulty the State has had in developing a coherent policy for managing the Area without impinging unduly upon the rights of those living within its parameters.

Federal court interference in that process at this juncture—particularly in light of the fact that a fully appealable State court decision is imminent on claims effectively the same as those plaintiffs raise here—would be an unfortunate misstep in the path towards resolution of the controversy the Plan has generated. Such interference not only could undermine resolution of that controversy, but could jeopardize preservation of a threatened natural resource repeatedly hailed as the sole source of drinking water for 2.5 million people. Such interference inevitably would produce "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy." *Burford,* 319 U.S. at 327, 63 S.Ct. at 1104. In conjunction with the other *Burford* factors, these considerations augur strongly in favor of abstention.

The foregoing is particularly true in light of the fact that the functional details of certain aspects of the Plan—most importantly the transferrable development rights that are a principal focus of plaintiffs' Second Amended Complaint—are subject to further local refinement. Indeed, plaintiffs' own memorandum indicates that various of the towns affected by the Plan have adopted or are in the process of adopting somewhat different implementing regulations concerning those rights. (*See* Pl.'s Mem. in Opp. ¶ 20(d).) The fact that this action and the State litigation so clearly involve basic matters of local policy further supports the exercise of the Court's equitable discretion to abstain. *Id.* at 332, 63 S.Ct. at 1106–07.

The need for discretionary interpretation of the Act and Plan likewise supports abstention. *Bethphage,* 965 F.2d at 1243. In their nominally facial constitutional attacks on the Act, plaintiffs challenge "the definition[ ] of the 'Central Pine Barrens' and especially the definition of the 'Core Preservation Area' " as used in the Act. (Second Am. Compl. ¶ 14.) They argue that the restrictions on development contained in the Act are unnecessary because previously existing State laws and regulations adequately protected the Area and the underlying aquifer. (*Id.* ¶ 16.) They argue that under the Act towns within the Area are able to make, and already have made, "separate and conflicting distinctions of particular classes of property owners." (*Id.* ¶ 20(d).) Such arguments make plain that resolution of this litigation demands not only interpretation of the Act, not only interpretation of other relevant State environmental laws, but comparative interpretation of municipal ordinances developed pursuant to

the Act. Once again, these are matters more appropriately determined by the State courts at this time.

The third factor the Second Circuit considered in *Bethphage* was whether the litigation's subject matter is "traditionally one of state concern." *Bethphage*, 965 F.2d at 1243. In light of the extensive history of State and local efforts to administer the Area appropriately and to resolve associated conflicts, as well as the Commission's integrated efforts to effectuate the goals of the Act, there can be no question but that the subject matter here is traditionally one of State concern.

Though provision for a system of State judicial review that would allow State courts to develop specialized knowledge of the scheme "has never been thought to be indispensable to *Burford* abstention," *Bethphage*, 965 F.2d at 1245, the Act's provision for expedited review of final determinations made pursuant to the Act under Article 78 of New York's Civil Practice Law and Rules further supports abstention in this case. When "followed from the Commission to the [s]tate [s]upreme [c]ourt," the adjudicative proceedings envisioned under the Act will "fully preserve[ ]" ultimate review of the federal questions presented in this case. *Burford*, 319 U.S. at 334, 63 S.Ct. at 1107. As noted previously, State court review of the same claims presented here is well under way.

## II. *Colorado River Abstention*

Though this case does not fit neatly into the "pigeon hole" defined by the *Colorado River* abstention doctrine, the overarching principle of that case further supports abstention here. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987) ("The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases.").

Mindful of the rule that the pendency of a State proceeding does not bar consideration of the same matter in federal court, the *Colorado River* Court held that abstention may be appropriate nonetheless based upon principles of "wise judicial administration" and "conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The Court directed the lower courts to consider the following factors to determine whether the "exceptional" circumstances warranting abstention are present: (1) assumption of jurisdiction over a *res;* (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights. *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir.1995). The State and federal proceedings must be essentially the same to abstain under the *Colorado River* doctrine. *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir.1985).

In this case, though not dispositive, the principles of wise judicial administration and comprehensive disposition of litigation further bolster the Court's decision to abstain. This case and the analogous State case involve complex issues of State policy that are virtually identical; were this Court not to abstain, those issues necessarily would be litigated piecemeal in State and federal courts. The fact that the State action was filed long before this action—in addition to the inherently local nature of the issues presented—further supports abstention. Plaintiffs' rights can be protected equally in either forum. Ultimate access to a federal forum is by no means precluded by abstention here.

Though the additional factors of jurisdiction over a *res* and the relative convenience of the fora do not weigh in favor of abstention, the preceding *Colorado River* factors provide additional support for the Court's decision to abstain.

## CONCLUSION

Given the complex State statutory scheme at issue and the intensely local nature of the problem of appropriately defining that scheme's meaning, this is one of those exceptional cases where abstention is appropriate. Though the Court is acutely aware of its general obligation to exercise jurisdiction in every case presented to it, the foregoing

analysis points ineluctably to the conclusion that, in equity, it must decline jurisdiction in this case. Only by abstaining will the State court be allowed a full and open opportunity to resolve the difficult factual and constitutional questions it has been struggling with for over two years. Such resolution is likely to render the questions plaintiffs present here academic. Should plaintiffs later demonstrate the inadequacy of the State forum to resolve their claims, they shall not be prejudiced to renew their claims before this Court by the Court's decision to abstain here. *See Bethphage,* 965 F.2d at 1247 (noting that abstention not appropriate if federal court does not remain open to plaintiffs who demonstrate inadequacy of State forum) (citation omitted).

For all of the foregoing reasons and consistent with the foregoing qualification, defendants' motion to dismiss under the doctrine of abstention must be, and the same hereby is, GRANTED.

SO ORDERED.