NEW HOLLAND VILLAGE CON-
DOMINIUM and its Individu-
al Members, Plaintiffs,

v.

DESTASO ENTERPRISES LIMITED,
Vincent DeStaso, New York State De-
partment of Environmental Conserva-
tion, Rockland County, New York,
and the Town of Clarkstown, Defen-
dants.

No. 00 CIV. 9431(CM).

United States District Court,
S.D. New York.

April 18, 2001.

John A. Keefe, Elefante & Persanis, LLP, Katonah, NY, for plaintiff.

Charles J. Gayner, Maloof, Lebowitz, Connahan & Oleske, New York, NY, for DeStaso Enterprises Ltd., Vincent DeStaso, defendants.

Darius P. Chafizadeh, Thacher Proffitt & Wood, White Plains, NY, for Rockland County, NY, defendant.

John McKenna, Robert A. Pierce & Ass'n, White Plains, NY, for Town of Clarkstown, NY, defendant.

## MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT

McMAHON, District Judge.

On September 16, 1999, Hurricane Floyd hit the New York Metropolitan area with considerable force, causing significant

damage and property loss. Among the storm's casualties was the Hyenga Dam, located in the Town of Clarkstown in Rockland County. The dam burst, carrying a wall of water—estimated at some 3 million gallons—down County Route 59, under the New York State Thruway, and into a condominium development known as New Holland Village, where it wreaked havoc on the residents and destroyed their property. So great was the devastation that the National Guard had to be called out to help clean up the area.

Plaintiffs, the owners of the condos that lay in the path of the water wall, theorize that the dam—which had been rated a "Significant Hazard" by the New York State Department of Environmental conservation as far back as 1978—had been neglected for years, was leaking and was overgrown with trees and shrubs. Moreover, on or about August 31, 1999, DeStaso Enterprises (which plaintiff concedes is a purely private enterprise, not a State actor) allegedly dug a 10 foot hole in the face of the dam (for reasons unknown to the Court). As the imminent arrival of Floyd was hardly a secret in this day and age of The Weather Channel, plaintiffs argue that someone—whether DEC, the Town of Clarkstown, Rockland County, DeStaso, or all of them—should have alerted plaintiffs to an imminent danger and taken steps to ensure that the dam would not collapse. It appears that plaintiffs suffered significant damage from the flooding; they seek money damages of $718,749 for costs of repair, $1.23 million for destruction of personal property, and $4.1 million for pain and suffering.

On its face, this appears to be a straightforward negligence suit, and one would expect it to be brought in the New York Court of Claims (as against DEC) and in the Rockland County Supreme Court (as against the other defendants). However, in an effort to bring all defendants together in a single forum (and in a posture in which prevailing plaintiff's attorneys' fees are available), plaintiffs have recast their claim against all defendants as one for a temporary physical taking in violation of the Takings Clause of the United States Constitution (Fifth and Fourteenth Amendments) and 42 U.S.C. § 1983. To be precise, plaintiffs contend that their property was physically "taken" by the flooding.

On closer inspection, the case is exactly what it appears to on its face—a straightforward negligence action. As against the State of New York, in whatever guise, it is constitutionally barred. As against the other defendants, no federal takings claim whatever is stated, and if one were, it would not be ripe for review. There being no diversity of citizenship, this court lacks jurisdiction to adjudicate plaintiff's negligence claim against Rockland County, Clarkstown, and the private defendants. The complaint is dismissed, on the following grounds:

*Claims Against New York State (Department of Environmental Conservation)*

 *Eleventh Amendment.* Absent a State's consent or valid Congressional abrogation of its sovereign immunity, a suit in federal court by private parties against the State, its agencies, or its officials acting in their official capacity, seeking money damages, is barred by the Eleventh Amendment to the United States Constitution. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–99, 101, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). The State asserts its Eleventh Amendment immunity here. Plaintiff has shown no reason why that immunity does not apply.

There is no suggestion, in the complaint or in the moving papers, that DEC ever expressly consented to be sued for money damages in a Federal Court in this or any similar instance. Plaintiff's argument rests on the State's voluntary participation

in a Federal program established under the National Dam Safety Act, 33 U.S.C.A. § 467 (1996) (The "Act") The Act, which was passed after a succession· of major dam breaks involving earthen dams, created a "National Dam Safety Review Board," made up of Federal and State officials. The Board's mission was to evaluate the safety of earthen dams in rural areas and to classify the dams so that States would be aware of the degree of hazard each structure represented. Federal funding authorized by the Act was made available to States for, *inter alia,* the handling of dam emergencies. The State of New York chose to participate in the evaluation program (which is how Hyenga Lake obtained the designation "Significant Hazard") and accepted Federal funds for handling dam emergencies. (Keefe Decl. at Ex. C.) Plaintiff interprets this as a waiver of New York's sovereign immunity in cases involving dams covered by the Act. I agree with the State that it is not.

▮ Generally a federal court will find a waiver of· sovereign immunity only when a State voluntarily invokes the Court's jurisdiction, *Gunter v. Atlantic Coast Line R.R.,* 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1906), or when the State makes "clear declaration" that it intends to submit itself to federal jurisdiction. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900. In the latter context, waiver will only be found "where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 678, 119 S.Ct. 2219, 2227, 144 L.Ed.2d 605 (1999), *citing Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974).

▮ There is little, if any, room under this stringent standard—one mandated by our federal system of Government—for the sort of "constructive" waiver of immunity that plaintiff asks this court to apply based on DEC's receipt of Federal funds under the Act. Courts "indulge every reasonable presumption against waiver" of fundamental constitutional rights. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Aetna v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). As a result, courts insist on evidence that the constitutional right in question was intentionally relinquished, and are uniformly hostile to the concept of "constructive" waiver of a constitutional right. *College Savings Bank,* 527 U.S. at 678, 119 S.Ct. at 2227. In particular, receipt of Federal funding or participation in a Federally-sponsored program have long been held insufficient to establish consent by the States to be sued in Federal court. *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. 1347; *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); *Yorktown Medical v. New York State Dept. of Social Services,* 948 F.2d 84, 88 (2d Cir.1991). Plaintiff's argument fails, and the complaint as against DEC is dismissed for lack of subject matter jurisdiction.[1] Plaintiffs are, of course, free to seek redress against DEC and any of its employees in the New York Court of Claims.

*Claims against Rockland County and Clarkstown*

1. No Takings Claim is Stated.

▮ Of the two flaws in plaintiffs' Section 1983 claim against the remaining mu-

---

**1.** For the same reason, plaintiffs' motion to amend their complaint to state a claim against various DEC officials who, acting in their official capacity, failed to remedy the situation at Hyenga Lake Dam, must be denied as futile.

nicipal defendants, by far the more fundamental is that plaintiffs have not—despite their contortionist pleading—stated a claim for an unconstitutional taking of their property.

█ It is well settled that claims sounding in negligence—even gross negligence, or negligence that results in grievous injury—cannot be disguised as constitutional claims and brought in a federal court under 42 U.S.C. § 1983. Mere negligence by a state official does not deprive an individual of life, liberty or property without due process of law. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *Farid v. Smith,* 850 F.2d 917, 922 (2d Cir.1988). This is true even if the state's negligence results in the loss of life or property.

Here, plaintiffs assert that the municipal defendants violated a duty to warn of possible flood damage resulting from bad weather, or to repair damage to Hyenga Lake Dam caused by a private actor (DeStaso). At least since *DeShaney,* this does not violate the United States Constitution. Analogous "takings" allegations have been rejected by other courts. For example, the Seventh Circuit dismissed a takings claim brought against municipal regulators of O'Hare Airport, who allegedly knew about dangers from airplane noise and exhaust gases that were causing injury to nearby residents, but failed to reduce or eliminate those conditions. *Bieneman v. The City of Chicago,* 864 F.2d 463 (7th Cir.1988). *See also Lucien v. Johnson,* 61 F.3d 573, 575–76 (7th Cir.) (loss of prisoner mail by a prison resulting from negligence of prison guards is not a taking), *cert. denied,* 516 U.S. 1012, 116 S.Ct. 572, 133 L.Ed.2d 495 (1995).

This Court has located a number of state court decisions (albeit none in New York) holding that negligence by a state actor which results in damage to property can result in a constitutional taking. See, e.g., *Bauer v. Ventura County,* 45 Cal.2d 276, 289 P.2d 1 (1955); *City of Danville v. Smallwood,* 347 S.W.2d 516 (Ky.1961); *Wilson v. Ramacher,* 352 N.W.2d 389 (Minn.1984); *Eller v. Board of Educ. of Buncombe County,* 242 N.C. 584, 89 S.E.2d 144 (1955); *Metzger v. Gresham,* 152 Or. 682, 54 P.2d 311 (1936). *But see Dallas County Flood Control Dist. v. Benson,* 157 Tex. 617, 306 S.W.2d 350 (1957) (finding negligent spraying of weeds by county employees, where spray drifted to plaintiff's crops, to be negligence and not a taking). However, each of these cases was decided under the takings clauses of the relevant state constitution, and not under the Fifth and Fourteenth Amendments to the United States Constitution. Therefore, they did not present any federal question, and cannot be relied on by plaintiff in this Court—at least not yet (see below for a discussion of the exhaustion requirement in a State takings case). And while several pre-*DeShaney* cases involving "bursting dams" or "breaking levees" were brought against the United States (for actions of the Army Corps of Engineers), the New Holland plaintiffs cannot rely on them for a variety of reasons— including the fact that none of them found the flooding that resulted from the Government's actions to constitute a taking. *See Stover v. United States,* 332 F.2d 204 (9th Cir.1964); *Goodman v. United States,* 113 F.2d 914 (8th Cir.1940); *Franklin v. United States,* 101 F.2d 459, 463 (6th Cir.), aff'd. 308 U.S. 516, 60 S.Ct. 170, 84 L.Ed. 439 (1939); *Christman v. United States,* 74 F.2d 112, 115 (7th Cir.1934).

Wisely recognizing that none of these precedents is helpful to their cause, plaintiffs attempt to hang their hat on *First Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), in which the Supreme Court sustained a tak-

ings claim under Section 1983 after the destruction of property in a fire. However, it was not the destruction of plaintiff's property (a campsite) by fire that constituted the taking in *First Evangelical Lutheran*. The constitutional "taking" was the County's decision to pass a law forbidding the plaintiff church from rebuilding the camp, which resulted in the church's being unable to use its property for a substantial period of time. In other words, the passage of a law, not the onset of a natural disaster, created a constitutional violation. There is no viable analogy between that case and this one.

■■■ *If a Takings Claim Were Stated, It Would Not Be Ripe for Adjudication.* If the instant complaint could be construed to state a potentially viable takings claim, it would still have to be dismissed, because plaintiffs have not availed themselves of New York's settled procedures for obtaining compensation for the taking. The Takings Clause has a remedy built into it: just compensation for the loss. Gregory M. Stein, Regulatory Takings and Ripeness in the Federal Courts, 48 Vand. L.Rev. 1, 15 (1995). No constitutional violation occurs until just compensation has been denied. Thus, to withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and was denied. *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Plaintiff has made no such allegation, and has represented to the Court that no efforts have been made to obtain just compensation in the State courts.

■■■ The only exception to the exhaustion requirement exists where the State does not make "reasonable, certain and adequate provision" for obtaining compensation for an alleged taking. *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120.

However, the State of New York has not one but two methods for obtaining compensation—by following the procedures set forth in the State's Eminent Domain Procedure Law, or by bringing an action under Article I, Section 7 of the New York State Constitution—both of which have been held to meet *Williamson*'s requirements. *See, e.g., Vaizburd v. United States*, 90 F.Supp.2d 210 (E.D.N.Y.2000).

Plaintiffs urge this Court to rule that Williamson's "exhaustion" requirement applies only to the exhaustion of administrative remedies, rather than judicial ones, but the Supreme Court's mandate is not so limited. As long as a state's procedures are reasonable, certain and adequate, they will pass constitutional muster, whether they are administrative or judicial in nature.

■■■ Plaintiffs also suggest that they ought to be able to bring a single federal proceeding in lieu of suing the various defendants in two separate courts. But there is nothing unreasonable about New York's decision to consent to damages jurisdiction only in a separate Court of Claims—the United States has a similar procedure—and plaintiffs' convenience is irrelevant so long as the State's remedial scheme affords them adequate opportunity to obtain relief, which it does.

### Claims Against the DeStaso Defendants

DeStaso Enterprises and Vincent DeStaso are not state actors. The claims against them are purely pendent to plaintiffs' purported federal claims. This Court will not adjudicate them in the absence of any independent basis for exercising federal jurisdiction.

\*　　\*　　\*　　\*　　\*　　\*

For all the above reasons, the complaint in this action is dismissed as against all defendants, without prejudice to the com-

mencement of actions against them in the New York State Unified Court System.