W.J.F. REALTY CORP. and
Reed Rubin, Plaintiffs,

v.

THE TOWN OF SOUTHAMPTON, the Town Board of the Town of Southampton, and the Planning Board of the Town of Southampton, Defendants.

No. 00–CV–6071 (TCP).

United States District Court,
E.D. New York.

Sept. 4, 2002.

Frederick Eisenbud, Law Office of Frederick Eisenbud, Commack, NY, for Defendants.

Meriem L. Hubbard, Pacific Legal Foundation, Sacramento, CA, for Pacific Legal Foundation.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court is Defendants' motion to amend their Answer pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and to dismiss Plaintiffs' Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

In this action, Plaintiffs assert claims for the alleged taking of their private property for public use without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiffs previously litigated these issues in the New York State court system against these same Defendants and also against the State of New York, unsuccessfully in both instances. At the State level, Plaintiffs purported to litigate only their New York State taking claims and also to reserve their right to litigate federal Fifth Amendment taking claims in a federal forum under the combined authority of *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) and *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).[1] (State Sec. Am. Compl. ¶ 2).

Defendants argue that Plaintiffs' attempt to reserve their federal claims for a federal forum was nugatory and that they are prohibited from taking this "third bite at the proverbial apple."

William W. Esseks, Esseks, Hefter & Angel, Riverhead, NY, for Plaintiffs.

---

1. Hereinafter referred to as *England* and *Williamson*.

For the following reasons, this Court disagrees with Defendants and will allow Plaintiffs to proceed with their federal taking claims here.

## BACKGROUND

### I. *Plaintiffs' Land And The Alleged Wrongful Acts By Defendants*

Since 1969, Plaintiffs have owned 272.5 acres of real property in the Town of Southampton (the "Subject Property"). (E.D.N.Y.Compl.¶¶ 10–13.) The Subject Property is located in a zoning district that was designated for "light industrial uses." (E.D.N.Y.Compl.¶ 11.)

In 1985, Plaintiffs applied for a minor subdivision of the Subject Property. (E.D.N.Y.Compl.¶¶ 15–16.)

The Town allegedly placed an "administrative hold" on Plaintiffs' subdivision application for more than two (2) years, beginning March 5, 1987. (E.D.N.Y.Compl.¶¶ 24, 38–47.)[2] Then, commencing on or about March 28, 1989, a series of legislative moratoria on approval of land-use applications were allegedly adopted by the Town while various Generic Environmental Impact Statements were being prepared (the "GEIS Study"). (E.D.N.Y.Compl.¶¶ 24, 48–72.)

In March 1993, Plaintiffs commenced two lawsuits in New York State—one against these same Defendants and one against the State of New York.[3]

In April 1993, Plaintiffs applied for an exemption from the GEIS moratoria, and Defendants denied the same in December 1993. (E.D.N.Y.Compl.¶¶ 73–78.)

The final GEIS moratoria terminated in June 1995, by which time the Town had opted into a plan prepared by the Central Pine Barrens Joint Planning and Policy Commission pursuant to the New York State Long Island Pine Barrens Protection Act of 1993 (the "Pine Barrens Act"), which allegedly imposed a permanent development moratorium on the Subject Property. (E.D.N.Y.Compl.¶¶ 79–81.)

Accordingly, Plaintiffs contend that the administrative hold and successive GEIS moratoria froze their subdivision application for over eight (8) years, until which time subdivision and development of the Subject Property were permanently prohibited. (E.D.N.Y.Compl.¶ 81.)

### II. *Actions In State Court*

In March 1993, Plaintiffs sued these same Defendants in the Supreme Court of the State of New York, County of Suffolk. In August 1994, Plaintiffs filed a Second Amended Verified Complaint (the "Second Amended Complaint"), asserting the following causes of action: (1) declaratory judgment that the moratoria and subsequently adopted local laws were unconstitutional, *ultra vires* and void; (2) inverse condemnation; (3) confiscation of property; (4) de facto appropriation; (5) regulatory taking without just compensation in violation of Article I, Section 7(a) of the New York Constitution; (6) temporary, regulatory taking without just compensation in violation of Article I, Section 7(a) of the New York Constitution; (7) procedural due process under the Fourteenth Amendment of the United States Constitution; (8) substantive due process under the Fourteenth Amendment of the United States Constitution and the New York Constitution; (9) equal protection under the Fourteenth Amendment of the United States Constitution and the New York Constitution; (10) injunction against GEIS

---

**2.** Plaintiffs allege that Defendants postponed granting the subdivision because Defendants themselves wanted to acquire the Subject Property, and accordingly were buying time to raise the funds to do so. (E.D.N.Y.Compl.¶¶ 31–37.)

**3.** These State lawsuits are detailed below.

Study restrictions as applied to the Subject Property; and (11) damages pursuant to 42 U.S.C. § 1983.

In this Second Amended Complaint, Plaintiffs stated that: "The scope of this action is limited in that the plaintiffs are asserting no federal claim whatever under the Fifth Amendment of the United States Constitution for the taking of property and just compensation and are expressly limiting their claims in that regard to violations of the New York State Constitution [and][p]ursuant to [*England*], plaintiffs expressly reserve the right to litigate all federal Fifth Amendment taking claims in a federal forum under the authority of [*Williamson*]." (State Sec. Am. Compl. ¶ 2.)

Plaintiffs moved for summary judgment in their favor on the first through sixth causes of action and Defendants cross-moved for summary judgment.

By decision dated August 23, 1995, the State Supreme Court (J. Harry E. Seidell) denied Plaintiffs' motion for summary judgment and partially granted Defendants' cross-motion "to the limited extent that the complaint is dismissed except as to plaintiffs' claims of due process and equal protection violations under the Federal and New York State Constitutions and as to the issue of damages asserted under the seventh through ninth, eleventh and twelfth causes of action asserted in the second amended complaint." (Order of 8/23/95 at 9.)

In this opinion, Justice Seidell recognized Plaintiffs' reservation of their Federal taking claims, specifically writing that "Plaintiffs do not assert any Federal claim under the Fifth Amendment of the Federal Constitution for the taking of property and just compensation, but limit their claims in that regard to violations of the New York State Constitution." (Order of 8/23/95 at 4 n. 2.)

Justice Seidell cited New York law on zoning regulations, namely that "[i]t is well settled that zoning regulations are afforded a strong presumption of constitutionality and the burden is on the party challenging such a regulation to prove its unconstitutionality beyond a reasonable doubt." (Order of 8/23/95 at 4.)

In his opinion as to the New York taking claims, Justice Seidell determined that there was no physical taking; there was no regulatory taking given that "Plaintiffs have failed to demonstrate that the challenged restriction, in fact, deprived them of absolutely any economically beneficial use of their property [and also] failed to demonstrate that the limitations imposed by the moratorium did not substantially advance legitimate state interests"; and finally that there was no temporary taking. (Order of 8/23/95 at 5–7.)

On November 6, 1995, Justice Seidell amended his August 23, 1995 decision by granting partial summary judgment to Plaintiffs as to that part of the first cause of action that sought a declaration that the moratoria were excessive and unconstitutionally void as to duration, but otherwise affirmed his decision. (Order of 11/6/95 at 2.)

A trial on the remaining causes of action commenced in December 1996. Before a decision was issued, on June 23, 1997, the Appellate Division, Second Department, reversed the grant of partial summary judgment to Plaintiffs on the first cause of action, dismissed the first cause of action as academic and also deemed Plaintiffs' appeal as withdrawn pursuant to a letter dated January 15, 1997. *W.J.F. Realty Corp. v. Town of Southampton*, 240 A.D.2d 657, 659 N.Y.S.2d 81, 82 (App.Div.1997).

There was a thirty-three (33) day, nonjury trial on the remaining causes of action (namely, the seventh through ninth and eleventh). By memorandum dated De-

cember 5, 1997, Justice Seidell dismissed the procedural and substantive due process causes of action but found that Plaintiffs proved a violation of equal protection due to the denial of their exemption application. (Order of 12/5/97 at 10–11.) Judgment was entered on January 23, 1998.

Defendants filed a Notice of Appeal from the Judgment and Plaintiffs filed a Cross Notice of Appeal. By decision dated May 24, 1999, the Appellate Division, Second Department, found that "the Supreme Court erred in finding that the plaintiffs were denied equal protection of the law." *W.J.F. Realty Corp. v. Town of Southampton,* 261 A.D.2d 609, 690 N.Y.S.2d 725, 728 (App.Div.1999). Plaintiffs appealed and, on September 2, 1999, the New York Court of Appeals dismissed the appeal sua sponte on the ground that there was no substantial constitutional question directly involved. *W.J.F. Realty Corp. v. Town of Southampton,* 93 N.Y.2d 1039, 697 N.Y.S.2d 567, 719 N.E.2d 928 (1999). Then, on December 2, 1999, the New York Court of Appeals denied Plaintiffs' motion for leave to appeal. *W.J.F. Realty Corp. v. Town of Southampton,* 94 N.Y.2d 756, 702 N.Y.S.2d 586, 724 N.E.2d 378 (1999).

Plaintiffs had also filed a lawsuit against the State of New York in the New York Supreme Court, Suffolk County, in which Plaintiffs again purported to reserve their right to litigate their Federal taking claims in Federal court. Justice Underwood ruled against Plaintiffs; the Appellate Division, Second Department, affirmed; and the Court of Appeals dismissed the appeal and denied Plaintiffs' motion for leave to appeal. *W.J.F. Realty Corp. v. State of New York,* 176 Misc.2d 763, 672 N.Y.S.2d

1007 (Sup.Ct.1998), *aff'd,* 267 A.D.2d 233, 710 N.Y.S.2d 249 (App.Div.1999), *appeal dismissed and motion for leave to appeal denied,* 95 N.Y.2d 831, 712 N.Y.S.2d 910, 734 N.E.2d 1211 (2000).

### III. *Action In The Eastern District Of New York*

In October 2000, Plaintiffs filed a Complaint in the instant action (the "E.D.N.Y. Complaint"). Plaintiffs allege that the "government, through a so-called administrative 'hold' and a series of moratoria extending over several years, actively thwarted the final approval of a subdivision application for a large parcel of industrially-zoned property adjacent to the Suffolk County Airport because government believed and hoped that public funds were or would become available to purchase the property, and government, in anticipation and in aid of such acquisition, wished to maintain the property in its natural, unsubdivided, undeveloped, and thus, least-valuable state." (E.D.N.Y.Compl.¶ 1.) Plaintiffs contend that Defendants' actions constituted a temporary and/or permanent taking of their private property for public use without just compensation, in violation of the Fifth Amendment of the United States Constitution as applied to States via the Fourteenth Amendment of the United States Constitution.[4] (E.D.N.Y.Compl.¶ 1.)

In the E.D.N.Y. Complaint, Plaintiffs note that: "The scope of this action is limited, in that Plaintiffs have previously litigated claims under the New York State Constitution, as well as Federal claims based upon the equal protection and due process clauses of the United States Con-

---

4. Plaintiffs assert the following causes of action: (1) temporary taking resulting from improper administrative hold; (2) temporary taking resulting from GEIS I Moratorium; (3) temporary taking resulting from GEIS II Moratorium; (4) temporary taking resulting from GEIS III Moratorium; (5) temporary and permanent taking resulting from Defendants' combined actions and regulations; (6) damages under 42 U.S.C. § 1983.

stitution, in an action brought in the Supreme Court of the State of New York, Suffolk County, entitled *W.J.F. Realty Corp. v. Town of Southampton.*" (E.D.N.Y.Compl.¶ 2.)

Defendants filed an Answer on November 30, 2000, raising several affirmative defenses including res judicata.

## DISCUSSION

### I. Motion To Amend Answer

Defendants move this Court to amend their Answer pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to add (1) factual allegations regarding Plaintiffs' lawsuit against the State of New York; and (2) collateral estoppel, Full Faith and Credit, and the Rooker–Feldman doctrine to the affirmative defense of res judicata.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." *Garvin v. United States,* 00–CV–2810, 2001 WL 1078339, at *1, 2001 U.S. Dist. LEXIS 14228, at *2–3 (E.D.N.Y. Aug. 22, 2001). Motions to amend are ordinarily granted, however courts still must weigh factors such as "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility, if any, of the proposed amendment." *Garvin,* 2001 WL 1078339, at *1, 2001 U.S. Dist. LEXIS 14228, at *3.

Defendants' motion to amend their Answer is granted and this Court will decide the concurrent Rule 12(c) motion to dismiss accordingly.

### II. Motion To Dismiss Complaint

Defendants also move this Court to dismiss Plaintiffs' Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Plaintiffs lost their two taking lawsuits in State court and that the intertwined doctrines of res judicata, collateral estoppel, Full Faith and Credit and the Rooker–Feldman doctrine require that Plaintiffs' "third bite at the proverbial apple" not be allowed.

Plaintiffs argue that, as per *Williamson,* their Federal taking claim did not ripen unless and until they sought relief in the State court system and thus preclusion is not a bar here. Further, in the State court actions, Plaintiffs raised their taking claims only under the New York State Constitution and attempted to reserve their right to bring their federal claims in a federal forum under the combined authority of *England* and *Williamson.*

### a. FRCP 12(c) Standard

The standard for motions brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the same as that applied to Rule 12(b)(6) motions. *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001). Accordingly, this Court must accept all allegations in the E.D.N.Y. Complaint as true and draw all inferences in favor of the non-moving Plaintiffs, dismissing the E.D.N.Y. Complaint only upon determining that it could not state any set of facts that would entitle Plaintiffs to relief. *Id.*

### b. Full Faith and Credit Clause

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Further, "Section 1983 ... does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims [and a] state-court judgment ... has the same claim preclusive effect in federal court that

the judgement would have in [State] court." *Id.* at 85, 104 S.Ct. 892.

### c. *Res Judicata/Claims Preclusion*

■ Res judicata bars future litigation of claims that were brought or could have been brought in a prior proceeding that resulted in a final judgment on the merits. *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan,* 263 F.3d 196, 200 (2d Cir.2001). Here, Defendants contend that Plaintiffs' federal taking claims could have been brought during the State proceedings and that said claims were indeed litigated.

Here, this Court is faced with the interesting and oft analyzed interplay of *Williamson* and *England.*

In *Williamson,* the Supreme Court stated that a landowner may not claim a violation of the Fifth Amendment until the landowner has unsuccessfully attempted to obtain just compensation through the procedures provided for by the State. 473 U.S. at 194–95, 105 S.Ct. 3108. *Williamson* is understood as stating that federal taking claims are not ripe unless and until the landowner has been denied just compensation in a State procedure. *See, e.g., New Holland Vill. Condo. v. Destaso Enters. Ltd.,* 139 F.Supp.2d 499, 504 (S.D.N.Y.2001), *aff'd,* No. 01–7627, 29 Fed. Appx. 760, 760–61, 2002 U.S.App. LEXIS 3642, at *2 (2d Cir. March 5, 2002); *Seventh Regiment Fund v. Pataki,* 179 F.Supp.2d 356, 361–63 (S.D.N.Y.2002). In fact, a landowner who fails to seek redress in the State system, and instead proceeds directly to federal court, faces certain dismissal of federal taking claims as unripe. *See, e.g., New Holland,* 139 F.Supp.2d at 504.

*Williamson* and its progeny place Plaintiffs in a precarious situation. Plaintiffs must seek redress from the State court before their federal taking claims ripen, and failure to do so will result in dismissal by the federal court. However, once having gone through the State court system, plaintiffs who then try to have their federal claims adjudicated in a federal forum face, in many cases, potential preclusion defenses. This appears to preclude completely litigants such as those in the case at bar from bringing federal taking claims in a federal forum, providing a federal forum only by way of the United States Supreme Court review of a State court judgment.

Some taking litigants have attempted unsuccessfully to assert an *England* reservation whereby they litigate their State claims in a State forum (as required by *Williamson* ) and expressly reserve their right to litigate their federal claims in a federal forum but have found themselves precluded; where other litigants have done so with success. In *England,* a non-taking case, the Supreme Court held that when a federal court abstains and the litigant is sent to State court, the litigant can "inform the state courts that he is exposing his federal claims there only [because of the abstention], and that he intends, should the state courts hold against him on the question of state law, to return to the [federal] District Court for disposition of his federal contentions." 375 U.S. at 421, 84 S.Ct. 461.

Some courts have suggested that *England*-type reservations should be made available to taking litigants compelled by *Williamson* to proceed in the State court, and further some courts have suggested that res judicata should not preclude litigants from adjudicating federal claims raised in the subsequent federal proceeding. *See, e.g., Greenspring Racquet Club, Inc. v. Baltimore County,* No. 99–2444, No. 00–1012, 2000 WL 1624496, at *4 n. 1, 2000 U.S.App. LEXIS 27207, at *11 n. 1 (4th Cir. Oct. 31, 2000); *Dodd v. Hood River County,* 59 F.3d 852, 862 (9th Cir. 1995), *following remand,* 136 F.3d 1219

(9th Cir.1998); *Macri v. King County*, 126 F.3d 1125, 1130 (9th Cir.1997); *Saboff v. St. John's River Water Mgmt.*, 200 F.3d 1356, 1359–60 (11th Cir.2000); *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1306 (11th Cir.1992). Other courts disagree. *See, e.g., Palomar Mobilehome Park Ass'n. v. City of San Marcos*, 989 F.2d 362, 364–65 (9th Cir.1993); *Wilkinson v. Pitkin County Bd. of County Comm'rs*, 142 F.3d 1319, 1324–25 (10th Cir.1998); *Peduto v. City of N. Wildwood*, 696 F.Supp. 1004 (D.N.J.1988), *aff'd*, 878 F.2d 725 (3d Cir.1989); *Heir v. Delaware River Port Auth.*, No. 01–5059, 2002 WL 1733278, *12 n. 7, 2002 U.S. Dist. LEXIS 13659, at *20–23 n. 7 (D.N.J. July 25, 2002); *Sudarsky v. City of New York*, 99 Civ. 10921, 2000 WL 1585082, at *2–*3, 2000 U.S. Dist. LEXIS 15545, at *6–*7 (S.D.N.Y. Oct. 24, 2000).

Defendants contend that *Hickerson v. City of New York* mandates that this Court refuse to entertain Plaintiffs' federal claims asserted here. 146 F.3d 99, 109–12 (2d Cir.1998). In Hickerson, a case involving a First Amendment claim, the Second Circuit stated, in part, that "[i]n light of *England's* emphasis on the need to preserve access to a federal forum *for those litigants who have chosen it,* and in light of the suggestive characterizations of *England* by the Supreme Court in the later cases of [*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ] and *Migra*, we agree with those courts that have held that *England* applies only to litigants who have sought to proceed in federal court in the first instance, and not to litigants such as the instant plaintiffs who voluntarily chose to file suit in state court." 146 F.3d at 111 (italics in original). That language notwithstanding, a complete reading of Hickerson leads this Court to believe that it may in fact honor Plaintiffs' attempted reservation here. The instant case is distinguishable from Hickerson, *inter alia*, because (1) in comparison to the Hickerson plaintiffs asserting First Amendment claims, Plaintiffs here were not "voluntarily" in State court and indeed were involuntarily required to commence litigation in State court due to *Williamson*, (2) Plaintiffs did not choose to file first in the State court and indeed were prohibited from filing first in federal court but did "in the first instance" in the State court reserve their right to bring federal claims in federal court, (3) Defendants here failed to object to Plaintiffs' *England*-type reservation when it was asserted and thereby effectively waived their right to object to the instant federal claims, and (4) New York Supreme Court Justice Seidell expressly recognized and indeed honored Plaintiffs' *England*-type reservation and expressly did not consider or decide the federal taking questions. Further distinguishing Hickerson, the Second Circuit stated, in part:

> In the instant case, plaintiffs did not invoke the jurisdiction of the federal court in the first instance, only to have the court invoke Pullman abstention. Instead, they filed suit in state court, which they believed would look upon their free-speech claims more favorably. Moreover, after defendants removed the case to federal court, plaintiffs moved to remand the case in its entirety (including their First Amendment claim) to state court, arguing that the case was not properly removable and also vigorously urging that their state constitutional claims "predominated," while their First Amendment claim was a mere "adjunct" or "supplement." ... The district court, in response to plaintiffs' motion, abstained under Pullman and remitted the state claims to state court, but denied plaintiffs' request to remand the federal constitutional claims and instead stayed these claims pending the outcome of the state litigation. ...

Only then did plaintiffs file an *England* reservation.

Under these circumstances, plaintiffs cannot meaningfully be said to have been deprived of a federal forum for their federal claims *"without [their] consent and through no fault of [their] own." England,* 375 U.S. at 415[, 84 S.Ct. 461]. If *defendants* had not sought to avail themselves of a federal forum after plaintiffs filed suit in state court, plaintiffs would have been held to their choice of forum and would have been required to submit their First Amendment claim to the New York state courts. The same would have been true if plaintiffs had been successful in moving to remand the entire case to state court. Alternatively, if plaintiffs' priority had been to obtain a federal forum for their First Amendment claim, they could have filed suit in federal court initially. *Cf. Migra,* 465 U.S. at 84–85 & n. 7[, 104 S.Ct. 892]. In light of *England's* emphasis on the need to preserve access to a federal forum *for those litigants who have chosen it,* and in light of the suggestive characterizations of *England* by the Supreme Court in the later cases of *Allen v. McCurry* and *Migra,* we agree with those courts that have held that *England* applies only to litigants who have sought to proceed in federal court in the first instance, and not to litigants such as the instant plaintiffs who voluntarily chose to file suit in state court.

146 F.3d at 110–11 (italics in original) (underline added).

As indicated, the facts in the *Hickerson* case are completely different and distinguishable from those in the case at bar.

Further and very importantly, New York Supreme Court Justice Seidell recognized and honored Plaintiffs' *England*-type reservation, expressly noting in his decision that "Plaintiffs do not assert any Federal claim under the Fifth Amendment of the Federal Constitution for the taking of property and just compensation, but limit their claims in that regard to violations of the New York State Constitution." (Order of 8/23/95 at 4 n. 2.)

Finally and also very importantly, Defendants failed to object to Plaintiffs' reservation at the time it was asserted. Defendants should not now, close to a decade later, be permitted to question the validity of said reservation.[5]

For these reasons, this Court finds that res judicata is not a bar to Plaintiffs' federal taking claims asserted here.

#### d. *Collateral Estoppel/Issue Preclusion*

 Having found that res judicata does not bar the assertion of federal taking claims here does not end this Court's pre-

---

5. Moreover, it defies logic and common sense to say that all federal Constitutional issues (save taking ones) which are coupled with significant State court questions which are not automatically precluded as unripe, may be preserved by a reservation for a return visit to a federal court, but so-coupled federal taking claims may not because they (unlike the others) are precluded from being brought in the first instance in a federal court. The reason for this court-made distinction in this case escapes us. It just makes no sense. The Court of Appeals for this Circuit, with remarkable consistency, has pursued a policy of not honoring District Courts' attempts to abstain with *England*-type reservations from deciding cases with mixed federal and State issues. *See, e.g., Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir.1998) (finding that this Court abused its discretion by abstaining), *vacating and remanding* 975 F.Supp. 440 (E.D.N.Y.1997). Certainly this Court should not close its doors to litigants alleging federal Constitutional claims, particularly when said litigants have made express efforts to reserve their right to be heard in federal court on federal claims.

clusion analysis. Collateral estoppel bars the re-litigation of issues of fact or law between the same parties when those issues have been actually litigated and determined by a prior, valid final judgment. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27. Collateral estoppel will apply if: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Phifer v. City of New York*, 289 F.3d 49, 56 (2d Cir.2002).

This Court does not find the application of collateral estoppel appropriate here given, in part, because taking claims under federal and New York law carry different burdens of proof. *See, e.g.*, RESTATEMENT (SECOND) OF JUDGMENTS § 28(4) (stating exception to general rule of issue preclusion when "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action ...". New York requires civil regulatory taking claimants to establish elements of their claims by the highest burden of proof—namely, beyond a reasonable doubt. *See, e.g., Briarcliff Assocs., Inc. v. Town of Cortlandt*, 272 A.D.2d 488, 708 N.Y.S.2d 421, 424 (App.Div.2000); *Gazza v. New York State Dep't of Envtl. Conservation*, 89 N.Y.2d 603, 657 N.Y.S.2d 555, 679 N.E.2d 1035, 1042 n. 3 (1997) ("We conclude that whether the petitioner must prove his claim beyond a reasonable doubt or by a lesser standard such as a preponderance of the evidence, there has been no taking and we decline to review the *de St. Aubin* decision"); *de St. Aubin v. Flacke*, 68 N.Y.2d 66, 505 N.Y.S.2d 859, 496 N.E.2d 879, 885 (1986) ("A landowner who claims that land regulation has effected a taking of his property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his claim beyond a reasonable doubt").

Indeed, in his August 23, 1995 opinion granting summary judgment against Plaintiffs, Justice Seidell reiterated that the burden of proof in declaring a zoning regulation unconstitutional was "beyond a reasonable doubt." (Order of 8/23/95 at 4.) Further, Justice Seidell expressly recognized that he was making his determination based upon New York State taking law and that Plaintiffs were not asserting any claims under the Fifth Amendment of the United States Constitution. (Order of 8/23/95 at 4 n. 2.)

Furthermore, Justice Seidell's opinion contains no analysis under federal taking law articulated in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), which delineated factors for a regulatory taking when a regulation places limitations on land but does not eliminate all economically beneficial use. *See also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, —— U.S. ——, 122 S.Ct. 1465, 1489, 152 L.Ed.2d 517 (2002); *cf. Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (stating categorical rule if regulation deprives owner of all economically beneficial use of land).

Thus, this Court concludes that collateral estoppel is not a bar here.

### e. *Rooker–Feldman*

■ "The *Rooker–Feldman* doctrine holds that inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Phifer*, 289 F.3d at 55 (citations omitted). Therefore, this Court lacks the jurisdiction to entertain claims "inextricably intertwined" with

**150**

the State courts' determinations. *Phifer,* 289 F.3d at 55. With regard to what claims are "inextricably intertwined", the Second Circuit has stated that "if the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* plainly will bar the action", however "where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not inextricably intertwined and therefore not barred by *Rooker–Feldman.*" *Phifer,* 289 F.3d at 56 (citations omitted). Further, "inextricably intertwined means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Phifer,* 289 F.3d at 56 (citations omitted). Notably, the Second Circuit stated that it "left open the possibility that a case might arise that would directly challenge a state court judgment in a way that the Supreme Court clearly envisioned would be barred by *Rooker–Feldman* and yet for some reason not be precluded." *Phifer,* 289 F.3d at 56–57 (citations omitted).

Defendants argue that the Rooker–Feldman doctrine is a bar here given the decisions rendered by the State courts. However, the State courts did not consider Plaintiffs' federal taking claims, the State courts honored Plaintiffs' *England* reservation, Justice Seidell expressly stated that Plaintiffs only brought claims under New York law and finally New York and federal law carry with them different burdens of proof. For these reasons, this Court concludes that the Rooker–Feldman doctrine is inapplicable here.

### CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion to amend their Answer must be and the same is hereby GRANTED; and Defendants' motion to dismiss the E.D.N.Y. Complaint must be and the same is hereby DENIED.

SO ORDERED.