OPINION OF THE COURT
Milton L. Williams, J.
On December 29, 1982, the defendant was indicted for attempted murder in the second degree. The defendant was released from custody when the surety, Julio Varela, posted $7,500 cash bail on January 13, 1983. On June 24, 1983 defendant failed to appear before Justice Shirley Levittan in Part 30 of Supreme Court. Justice Levittan ordered the bail forfeited and a bench warrant. The People answered ready for trial. On June 30, 1983, the defendant returned to court voluntarily, at the surety’s request, and was remanded at both the People’s and surety’s request. On the next adjourn date, July 5, Justice Levittan exonerated the bail. Due to clerical error, the exoneration order was not effectuated and the forfeiture was. This application is for the remission of the forfeited bail. Defendant pleaded guilty on November 16, 1983 and was sentenced December 7, 1983 to a sentence of three to nine years.
*993 Surety’s key argument for remission alleges that Justice Levittan’s order to exonerate,[1] erroneously ignored, should have been effectuated and that this application should be granted on that basis. He further, and less forcefully, argues that defendant failed to appear because he had a Family Court appearance scheduled for the same day; that if this application is denied he will suffer severe financial hardship; and that no prejudice was suffered by the prosecution under these circumstances. The People argue in rebuttal that Justice Levittan’s attempted exoneration amounted to a remission application, since the bail had been declared forfeited, but did not follow the statutory procedure for such an application and, therefore having no effect on this application for remission; that the excuse of a Family Court appearance on the same day is not an exceptional circumstance nor was any other exceptional circumstance justifying remission cited; that surety fails to allege sufficient detail to warrant a finding of hardship; and finally that they suffered extreme prejudice in that they were ready for trial on the date of the forfeiture and were prevented from trying the case by defendant’s absence.
The issue for determination is whether or not an order of vacatur of forfeited bail, not obtained pursuant to CPL article 540 and which, subsequently, was rendered a nullity by clerical error, constitutes adequate grounds for relief in an article 540 application.
A brief definition of terminology is needed before discussing this case. “Vacatur” is a court’s power to set aside or open its judgments or orders upon such terms as are just. It derives originally from the common law and is considered part of the inherent power of a court (Ladd v Stevenson, 112 NY 325), although there are, additionally, statutory sources of vacatur power. “Bail remission” or “remission of forfeiture” refers to vacatur within the specialized context of CPL article 540.
Although “motion to vacate” and “bail remission application” mean substantially the same thing, in New York *994 County practice usage a distinction has developed. While the purpose of both is to relieve a surety of the burden of loss incurred on his undertaking, the terms “vacate” or “vacatur” have come to be used primarily in reference to an application to set aside an unexecuted order or judgment of forfeiture, usually shortly (within a couple of weeks or so) after it has been declared, whereas “bail remission application” has come to refer to an application to set aside the forfeiture after the judgment has successfully been executed.
In addition to the distinction which has developed as to the time frame of these applications, other distinctions exist or have developed. Bail remission applications are a unique civil-criminal hybrid in that the application is originally brought as a civil action and is then referred to the Criminal Term for determination. Vacatur applications are made directly to the court which declared the forfeiture without instituting a separate action. Generally the standards applied to bail remission applications are stricter, since it is a statutory privilege and the statute is therefore read narrowly (People v Public Serv. Mut. Ins. Co., 37 NY2d 606). Applications in New York City are made on papers to the Administrative Judge of the county Supreme Court, Criminal Term,[2] on notice to the District Attorney, and are reviewed carefully. Vacatur applications, in contrast, are usually made orally in open court at the principal’s first appearance after the forfeiture. While it is true that the Judge who declared the forfeiture may have the advantages of confrontation, proximity in time to the event, and familiarity with the case, the application is usually made to Judges with little time to inquire into the matter. Hence, many times these applications are granted, effectively giving the applicants relief that they perhaps would not obtain under the statutory provisions.
Those distinctions help to explain why this extrastatutory practice has persisted; generally it is less cumbersome and offers quicker relief than an article 540 application. The vacatur application can be made immediately after the *995 forfeiture has been declared, while in theory, since bail remission looks to the recovery of moneys paid on an executed judgment (note CPL art 540 generally, and specifically CPL 540.30, subd 2), one would have to wait until execution had successfully occurred before an action would lie (or at least this seems to be the practice that has developed in New York County). Also, if the vacatur application is successful, the Judge sets aside the forfeiture, alerts the clerk’s office of this fact and the matter is done, without surety losing time or money. By the time a remission application is successfully made, however, surety has already paid out the value of the undertaking; legal fees have been paid to the attorney who handled the remission action; court fees were paid to initiate the action; it will take several additional weeks before the check is actually in hand; the city will automatically deduct service fees from the refund; and finally he or she may only obtain a partial remission.
CPL article 540 which governs bail forfeiture and remission makes one brief reference to vacatur prior to execution of a forfeiture. CPL 540.10 (subd 2) states in part: “If the principal appears at any time before the final adjournment of the court, and satisfactorily excuses his neglect, the court may direct the forfeiture to be discharged upon such terms as are just.”
This provision, however, does not appear to be dispositive of a court’s inherent power to vacate, set aside or modify its judgments and orders in its discretion and in the interests of justice. This power is not dependent upon statutory provisions but flows from the control a court has over the proceedings therein (Ladd v Stevenson, 112 NY 325, supra; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.12).
While it seems apparent that the Legislature intended, by enacting article 540, to curtail this inherent power, it is not clear as to what extent they wished to do so. There appears to be no legislative history on this issue. The provision cited above, if taken in context, may be read to exclude “vacaturs” sought after the day the forfeiture is declared but does not do so explicitly. Moreover, other provisions give a certain amount of leeway timewise, to *996 those vested with the power to execute forfeitures to do so. (CPL 540.10, subds 2, 3.) Typically, it has been within this time period that applicants have obtained these vacaturs.
An administrative indication that the power to remit bail moneys should be restricted was given in 1978 when the Administrative Judge of the City of New York pursuant to powers delegated to him ultimately by the Legislature, assigned the power to determine article 540 applications, in New York City, exclusively to the Administrative Judge of the Supreme Court, Criminal Term, of pach county (see n 2, supra, p 994), clearly an effort to exercise greater control over these matters. The Administrative Judge’s directives do not speak to the issue of “vacaturs” at all. The exercise of this inherent power continues as it apparently has throughout the existence of statutory bail remission.
In a case decided under provisions of the Code of Criminal Procedure very similar to the bail remission provisions of the CPL, the court found that where a court in a criminal matter declared a forfeiture of bail and subsequently issued an order to vacate the forfeiture before it was executed, the vacatur was valid, notwithstanding the facts that clerical error had prevented the vacatur from being effectuated, and a bail remission procedure existed (upon which the Statute of Limitations had run at the time of application) (Matter of Cerra, 53 NYS2d 556).
In view of the historical persistence of the remedy in the bail forfeiture context, its firm underpinning in common-law doctrine and the equivocal legislative and administrative record regarding it, it is my opinion that vacaturs pursuant to court’s inherent power are a valid exercise of a court’s power in the bail forfeiture context and are deserving of full force and effect on this basis. Generally conflicts do not occur between the two forfeiture remedies, as a practical matter, unless there is some sort of clerical error either on the part of the courts, as here, or the prosecutor’s office. The key problem is that of fairness and equal treatment in similar situations. In the absence of clarification by the Legislature or the court administrators, I think that courts granting “vacaturs” as remedies for bail forfeiture should seek to conform their decisions to the substantive *997 case law of the bail remission area. Some of the key cases include: People v Public Serv. Mut. Ins. Co. (37 NY2d 606, supra); People v Peerless Ins. Co. (21 AD2d 609); People v Continental Cas. Co. (200 Misc 546).
In the instant case, therefore, I hold that the prior order of exoneration be effectuated and the bail money be remitted to surety in full. That order issued soon after principal’s short absence and return and well before the Supreme Court clerk’s office processed the judgment and officially released the moneys to the city on July 15, 1983. Surety relied on that order and but for clerical failure on the part of the court system, that reliance would have been rewarded soon after the order issued. It is intolerable that an innocent party suffer injury due to clerical mistakes made by court personnel; such a person has “a right to rely upon the integrity and justice of the Court” (Matter of Cerra, supra, p 557). This court agrees.
The other substantive grounds for relief argued in this application will not be reviewed, in light of the decision and since they probably were the same ones argued before Justice Levittan (although it is not clear whether this was the case). The power that a court has over its judgments and process notwithstanding, it is equally well established that, in the interests of orderly administration of justice, Judges as a general rule should not disturb, vacate, reconsider or modify determinations of a Judge of concurrent jurisdiction (28 NY Jur 2d, Courts and Judges, § 86, p 153).
However, it suffices to say that the bail remission case law allows liberal exercise of discretion by courts, in the interests of justice (People v Peerless Ins. Co., 21 AD2d 609, supra), and this case seems to contain factual elements that could reasonably elicit such exercise.
Motion to vacate forfeiture and remit bail granted in full.

. An order to “exonerate” bail relieves a surety of his undertaking and, consequently, refunds moneys put up as bail. It also means a change in bail status if the case has not been resolved. Here, where the exoneration was ordered after a forfeiture and where it was the intent of the Judge, it was intended to vacate the forfeiture; to reinstate the bail undertaking; to relieve the surety of the reinstated bail undertaking; and to refund the bail money. The defendant’s bail status was changed to remand.

. By directive of the Administrative Judge of the City of New York, Directives 111 and 112 (Sept. 8, 1978). GPL article 540 does not require this, simply stating that application be made to a superior court or in appropriate situations, District Courts (CPL 540.30, subd 1).