**INTERNATIONAL FIDELITY INSURANCE CO.,**
**Plaintiff,**

v.

**CITY OF NEW YORK et alia, Defendants.**

**No. CV–00–0693.**

United States District Court,
E.D. New York.

April 24, 2003.

Antoinette W. Blanchette, NYC Office of the Corporation Counsel Law Department 100 Church Street, New York, NY, for Plaintiff.

Lawrence Elliott Fenster, Ross & Hardies, New York, NY, Beth D. Jacob Brobeck Phleger & Harrison, New York, NY for International Fidelity Ins. Co.

## MEMORANDUM AND ORDER

SIFTON, Senior District Judge.

Plaintiff International Fidelity Insurance Company ("IFIC") brings this action against defendants the City of New York, Charles J. Hynes, District Attorney of Kings County, and Richard A. Brown, District Attorney of Queens County, seeking a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,[1] declar-

---

1. The Declaratory Judgment Act provides:

In a case of actual controversy within its jurisdiction ... any court of the United

ing: (1) 150 judgments of forfeiture of bail entered in Kings County (the "Kings County judgments") and 191 judgments entered in Queens County (the "Queens County judgments") for which plaintiff is the surety were entered in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution; (2) the Kings and Queens County judgments for which plaintiff is the surety were entered in violation of the Due Process Clause of the New York State Constitution; (3) New York Criminal Procedure § 540 violates the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution; [2] and (4) § 540 violates the Due Process Clause of the New York State Constitution. Plaintiff also seeks vacatur of the judgments of forfeiture at issue because (5) defendants obtained the judgments in violation of plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution; (6) defendants obtained the judgments in violation of plaintiff's due process rights under the New York State Constitution; (7) twelve of the judgments are unenforceable because defendants Hynes and Brown failed to provide plaintiff with any notice of entry of judgment of forfeiture for two bail bonds in Kings County and ten bail bonds in Queens County, respectively; (8) 108 of the judgments are unenforceable because defendants Hynes and Brown failed to provide plaintiff with any notice of entry of judgment of forfeiture until months after the judgments were entered for three bail bonds in Kings County and one hundred five bail bonds in Queens County, respectively; (9) nineteen of the judgments are unenforceable because defendants Hynes and Brown failed to enter judgments within the statutory period required under N.Y.Crim. Pro. Law § 540 for six bail bonds in Kings County and thirteen bail bonds in Queens County, respectively. Finally, (10) plaintiff claims restitution of previously satisfied judgments of bail forfeiture from the past six years on grounds that during that period plaintiff has been the surety for hundreds of bail bonds in the City of New York for which judgment of forfeiture was entered where defendants failed to provide plaintiff with notice before entry of judgment; thus, such judgments were wrongfully enforced and the amounts paid must be returned with accrued interest. Plaintiff seeks the following relief: (a) on claims 1–4, a declaratory judgment; (b) on claims 5–9, vacatur of the state court judgments of forfeiture; (c) on claim 10, restitution with interest of payment made on previously enforced bail judgments, and (d) its costs and expenses in this action.

In their amended answer, defendants assert six counterclaims against IFIC alleging: (1) the provisions of N.Y.Crim. Pro. Law §§ 540.10–540.30 are constitutional; (2) judgments of forfeiture issued pursuant to N.Y.Crim. Pro. Law §§ 540.10–540.30 are valid and enforceable; (3) plaintiff's failure to make payments on judgments of forfeiture is a

---

States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201.

**2.** Federal law requires that notice be given to the State Attorney General when a lawsuit calls in question the constitutionality of a state law. *See* 28 U.S.C. § 2403(a). Here, the Attorney General's office notified the Court that it has not yet exercised its power to intervene pursuant to Executive Law § 71 but reserves its right to do so, if necessary, in the appellate stage of this matter.

breach of contract; (4) plaintiff's failure to make payments on judgments of forfeiture is a violation of plaintiff's statutory obligations under New York State Law; (5) plaintiff's failure to produce bonded criminal defendants is a breach of contract; and (6) plaintiff's failure to produce bonded criminal defendants is a violation of plaintiff's statutory obligations under New York State Law.

Defendants move pursuant to Rule 15 of the Federal Rules of Civil Procedure for leave to amend their answer to interpose a statute of limitations defense and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] Plaintiff cross-moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on seven of their ten causes of action.[4] Also at issue is the question of this Court's subject matter jurisdiction, which was raised *sua sponte* by the Court and fully briefed and argued by the parties.

For the reasons set forth below, plaintiff's first, second, fifth, sixth, seventh, eighth, ninth, and tenth claims for relief are dismissed for lack of subject matter jurisdiction. Plaintiff's third and fourth claims for relief are dismissed for lack of standing. Defendants' first counterclaim is dismissed on ripeness grounds. Defendants' second counterclaim is dismissed for lack of subject matter jurisdiction. Defendants' third, fourth, fifth, and sixth counterclaims are dismissed under the New York doctrine of double recovery. I have no occasion to consider defendants' motion to amend the answer.

## BACKGROUND

The following facts are taken from the parties' submissions in connection with the present motions and the previous round of summary judgment motions. For purposes of the summary judgment motions, I assume all uncontroverted Rule 56.1 factual assertions are not in dispute. *See Titan Indemnity Co. v. Triborough Bridge & Tunnel Authority*, 135 F.3d 831, 835 (2d Cir.1998).

Plaintiff IFIC is a corporation organized under the laws of New Jersey with its principal place of business in Newark, New Jersey. IFIC is an insurance company and writer and issuer of bail bonds operating within the City and State of New York. Since 1990, IFIC has been the surety on hundreds of bail bonds posted in Kings and Queens Counties, New York. IFIC is the largest writer of bail in New York City and throughout New York State.

### Bail Bonding Process

Bail is a condition set by the court under which a person arrested for a crime will be released from custody. The purpose of bail is to ensure the appearance of criminal defendants at all court proceedings relevant to the charges against them.

When the court fixes bail, the criminal defendant may submit a bail bond in full satisfaction of the bail amount set by the court; the bail bond is a contract between three parties: the defendant, the surety,

---

**3.** Defendants' motion for summary judgment argues three points: (1) plaintiff's claims relating to bail forfeitures entered as judgments prior to February 3, 1997, are time-barred; (2) Defendant is entitled to summary judgment on plaintiff's remaining claims because N.Y.C.P.L. § 540 does not violate the due process provisions of the United States or New York Constitutions; and (3) defendant is entitled to summary judgment on its counterclaims.

**4.** Plaintiff moves the Court pursuant to Rule 56 for summary judgment on its first through sixth and its tenth claims.

and the State.[5] The surety may also receive a bail affidavit from the criminal defendant or an indemnity agreement and confession of judgment [6] from a third party as collateral against any loss on the bond.

Generally, defendants, or their indemnitors, do not deal directly with the surety, but rather deal with a bail bondsman (also referred to as a producer or retail seller of bail). IFIC authorizes selected bail bondsmen to act as its agents by giving them power of attorney to sign a particular bond for a certain amount. Bail bondsmen prepare papers that are filed with the courts and monitor the defendant to ensure his return to court when required.[7] The contract between the surety and the State is reflected in a state-approved form document entitled the "Undertaking of Bail." [8] IFIC's limited power of attorney to its bail bondsman is generally attached to and made a part of the Undertaking of Bail. The Undertaking of Bail at issue in this case states in pertinent part:

> We, [Defendant] and INTERNATIONAL FIDELITY INSURANCE COMPANY of One Newark Center, 20th Floor, Newark, N.J., surety, hereby undertake, jointly and severally, that the above named defendant shall appear and answer the charge above mentioned, in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and process of the court; and if convicted, shall appear for judgment, and render himself in execution thereof; or if he fails to perform either of these conditions, that we will pay the People of the State of New York, the sum of ($_____) dollars.

### Bail Bond Forfeiture Process

New York's bail bond forfeiture process is governed by N.Y.Crim. Pro. Law §§ 540.10–540.30. When a criminal defendant fails to appear and a surety fails to produce the defendant as required, the bail bond is generally forfeited pursuant to § 540.10(1). Section 540.10(1) states in part:

> If, without sufficient excuse, a principal does not appear when required or does not render himself amenable to the orders and processes of the criminal court wherein bail has been posted, the court must enter such facts upon its minutes and the bail bond or the cash bail, as the case may be, is thereupon forfeited.

N.Y. Crim Pro. Law § 540.10(1). The bail bond is deemed forfeited when the defendant's nonappearance is entered on the minutes of the court. The court's notation of the defendant's nonappearance and forfeiture of the bond is thereafter reduced to a written order of forfeiture.

---

5. The defendant agrees with the State that he will appear in court when required. The surety agrees with the State that the defendant will appear in court when so required or the amount of bail posted will be forfeited to the State. The defendant, or sometimes the defendant's indemnitor, agrees with the surety that, if the defendant does not appear and the bail is forfeited, the defendant (or indemnitor) will pay the amount of the forfeited bail to the surety.

6. The confession of judgment is executed by the indemnitor when the bail bond is purchased.

7. Bail bondsmen generally monitor a defendant by requiring the defendant to report in regular intervals, making certain that defendant understands when he is required to be in court, and by taking custody of documents, such as defendant's passport, that would enable the defendant to flee.

8. The contract is also at times referred to as the "Form of Consolidated Bail Bond" and the "Undertaking to Answer."

■ Since October 1998, the district attorney must file the bail bond forfeiture order with the appropriate County Clerk of Court within 120 days of the date of forfeiture pursuant to § 540.10(2),[9] which states in pertinent part:

If the principal appears at any time before the final adjournment of the court, and satisfactorily excuses his neglect, the court may direct the forfeiture to be discharged upon such terms as are just. If the forfeiture is not so discharged and the forfeited bail consisted of a bail bond, the district attorney, within one hundred twenty days after the adjournment of the court at which such bond was directed to be forfeited, must proceed against the obligor or obligors who executed such bond, in the manner prescribed in subdivision three.

N.Y.Crim. Pro. Law § 540.10(2).[10] The timely entry of the court's forfeiture order is a prerequisite to recovering from the surety; thus, the 120–day period is "analogous to a conventional Statute of Limitations, which suspends the remedy without abolishing the substantive right." *People v. Schonfeld,* 74 N.Y.2d 324, 330, 547 N.Y.S.2d 266, 546 N.E.2d 395 (N.Y.1989).

Once properly filed, the Clerk of Court enters the forfeiture order as a civil judgment of forfeiture against the surety, constituting a lien on any real estate of the surety who executed the bail bond pursuant to § 540.10(3).[11] Plaintiff IFIC owns no real property in Kings or Queens Counties to which liens have attached as a result of this procedure. In the event the surety is unable to locate the criminal defendant and must make payment on the forfeited bail bond, the surety is entitled to execute the Confession of Judgment signed by the indemnitor and execute on the collateral identified in the bail affidavit pursuant to the terms and conditions of those agreements. Generally, after a judgment of forfeiture of bail is entered, the district attorney provides written notice of the judgment and a demand for payment.[12]

*Challenging Forfeitures*

New York State law provides several means through which a surety may challenge an order or judgment of forfeiture. According to defendants, a surety may challenge forfeiture of a bail bond before entry of judgment of forfeiture by producing the criminal defendant or excusing the

9. Prior to October 1998, the district attorney was required to file the bail bond forfeiture order with the appropriate County Clerk of Court within 60 days of the date of forfeiture.

10. The procedure for forfeiture of cash bail is somewhat different than that of a bail bond, *see* N.Y. Crim Pro. Law § 540.10(2), the constitutionality of which is not at issue in this case.

11. Section 540.10(3) states:

A bail bond or cash bail, upon being forfeited, together with a certified copy of the order of the court forfeiting the same, must be filed by the district attorney in the office of the clerk of the county wherein such order was issued. Such clerk must docket the same in the book kept by him for dock-

eting of judgments and enter therein a judgment against the obligor or obligors who executed such bail bond for the amount of the penalty of said bond or against the person who posted the cash bail for the amount of the cash bail, and the bond and the certified copy of the order of the court forfeiting the bond or the cash bail constitutes the judgment roll. Such judgment constitutes a lien on the real estate of the obligor or obligors who executed such bail bond from the time of the entry of the judgment.
N.Y.Crim. Pro. Law § 540.10(3).

12. Plaintiff claims that, with respect to many of the judgments at issue, either the district attorney failed to notify plaintiff of the entered judgment of forfeiture of bail or did so in an untimely manner.

criminal defendant's nonappearance. *See* N.Y.Crim. Pro. Law § 540.10(2). Plaintiff, on the other hand, contends that under New York law as interpreted and applied by defendants, the surety's first opportunity to challenge a forfeiture arises after judgment has already been entered. It is undisputed that a surety may make an application for remission of a judgment of forfeiture entered by a County Clerk of Court anytime up to one year from the date of forfeiture. *See* N.Y.Crim. Pro. Law § 540.30.[13] A surety may also move to vacate a judgment of forfeiture entered by the Clerk pursuant to N.Y. C.P.L.R. 5015.[14]

### IFIC's Claims

Plaintiff IFIC is the surety for approximately three million dollars in outstanding judgments on forfeited bail bonds which, to date, IFIC has failed to make payments on. Plaintiff claims that it is the surety for 150 bail bonds in Kings County, New York, for which defendant District Attorney Hynes failed to provide plaintiff with notice before entry of judgment. According to defendants, in each of those cases, the criminal defendant failed to appear, IFIC failed to subsequently produce the

defendant, and judgment was timely entered. To date, plaintiff IFIC has failed to make payment on these 150 outstanding judgments.

Similarly, in Queens County, New York, plaintiff claims that it is the surety for at least 191 bail bonds for which defendant District Attorney Brown failed to provide plaintiff with notice before judgment of forfeiture had been entered. According to defendants, in each case, the criminal defendants failed to appear, IFIC failed to subsequently produce the criminal defendant, and judgment was timely entered. To date, IFIC has failed to make payment on these 191 outstanding judgments.

### PROCEDURAL HISTORY

Plaintiffs filed their complaint on February 2, 2000. Defendants filed their answer on March 21, 2000. The parties agreed before Magistrate Judge Caden on May 10, 2000, that no discovery would be necessary in this case, and none has been conducted. Defendants filed their first amended answer with counterclaims on September 6, 2000. On September 29 and October 4, 2000, plaintiff moved, respec-

---

**13.** Section 540.30 states in relevant part that an application for remission of forfeiture may be made to a court:

within one year after the forfeiture of the bail is declared upon at least five days notice to the district attorney and service of copies of the affidavits and papers upon which the application is founded. The court may grant the application and remit the forfeiture or any part thereof, upon such terms as are just. The application may be granted only upon payment of the costs and expenses incurred in the proceedings for the enforcement of the forfeiture.

N.Y.Crim. Pro. Law § 540.30(2). The New York Court of Appeals has interpreted the one-year period strictly, construing it as a statute of limitations. *See People v. Public Srvc. Mutual Ins.*, 37 N.Y.2d 606, 612–13, 376 N.Y.S.2d 421, 339 N.E.2d 128 (1975).

**14.** Rule 5015, which deals with relief from judgments or orders, allows a *court on motion* to:

relieve a party from [a judgment or order] upon such terms as may be just, on motion of any *interested person with such notice as* the court may direct, upon the ground of:

1. excusable default . . .; or
2. newly discovered evidence . . .; or
3. fraud, misrepresentation, or other misconduct of an adverse party; or
4. lack of jurisdiction to render the judgment or order; or
5. reversal, modification or vacatur of a prior judgment or order upon which it is based.

N.Y. C.P.L.R. 5015(a).

tively, for partial summary judgment on six of its ten claims and to dismiss two of defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6). On October 26, 2000, defendants cross-moved for summary judgment.

The parties' motions were argued on March 22, 2001. I reserved decision and requested that the parties come to agreement on which judgments of forfeiture are at issue in this case and to further brief the issue of remedies. At a status conference held on February 7, 2002, I denied the motions for summary judgment without prejudice to their renewal, and invited a motion from defendants arguing that this case does not raise a constitutional issue. At the status conference, I stated the following:

> I, on reviewing all of this, became persuaded that due process, in quotes, that is, the procedures that are due to someone before they lose their property, under the Constitution, was not provided, and I was in the course of preparing a somewhat lengthy opinion going through the necessary analysis and considering whether the process, the post-deprivation process excused the failure to give predeprivation process and so forth.
>
> When I looked again at the statute that is being complained about and noticed that the statute provides that the judgments shall be liens against real property, it doesn't say where, but I would assume within the county in which the judgment is filed, that then meant—led me to examine, again, what I hadn't examined sufficiently, which is whether there is in fact a property interest that the plaintiff has of which it is being deprived.
>
> Ordinarily, one would think to have a judgment against you is a pretty serious matter, but trying to look for precedent to the effect that a judgment affects property interests, I came up with Supreme Court authority that said, again, well, if you have a lien or if there are some other collateral consequences, maybe that will amount to a property deprivation.
>
> But having looked through the papers to see if I could—I mean, I don't for one thing, know whether this plaintiff has any property in Kings or Queens Counties or what in the world is done with these judgments once they are secured and, as a practical matter, it does astound me that this company can sit and do business with its huge number of judgments—I mean, huge by any standard—number of judgments outstanding against it. It seems to survive rather well.
>
> Having reached that conclusion, I didn't think there was much point to a lengthy written exposition of the question of whether due process had been denied and that the most appropriate course and the most expeditious course was simply to deny the motion for summary judgment without prejudice to its renewal by the plaintiff if there is a more complete record of genuinely undisputed facts that it can put before me to establish that in fact these judgments do deprive a property interest. . . .

(Tr. of Conference of 2/7/02, at 2–4.) Following this ruling, the parties filed the motions currently before the Court. On October 30, 2002, at the parties' first appearance for arguments on these renewed motions, I raised *sua sponte* the issue of this Court's subject matter jurisdiction and requested that the parties brief the issue of whether the Court lacked jurisdiction over some or all of plaintiff's claims, particularly under the *Rooker–Feldman* doctrine, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923);

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Defendants responded with arguments that plaintiff's first, second, fifth, eighth, ninth, and tenth claims for relief are barred by *Rooker–Feldman* and that the Court should abstain from exercising jurisdiction over plaintiff's third and fourth claims for relief under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Plaintiff maintains that this Court has jurisdiction, that *Younger* abstention is not warranted, and that in any event defendants have waived abstention. Thus, currently before the Court are defendants' motions to dismiss for lack of subject matter jurisdiction and for abstention, both parties' motions for summary judgment, and defendants' motion to amend the answer.

## DISCUSSION

### *Jurisdiction: Rooker–Feldman Doctrine*

 Plaintiff invokes this Court's jurisdiction over its federal law claims under 28 U.S.C. §§ 1331 and 1332 [15] and over its state law claims under 28 U.S.C. § 1367. In resolving a motion to dismiss for lack of subject matter jurisdiction, a court may consider matters outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). Plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Id.*

 "The so-called *Rooker–Feldman* doctrine, generally stated, is that inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Su-

preme Court." *Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 197 (2d Cir.1996). This Court will lack subject matter jurisdiction over the present case "if the exercise of jurisdiction would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998). A district court may not consider claims that were actually litigated in state court, nor may a district court entertain claims that are "inextricably intertwined" with a state court judgment. See *Moccio*, 95 F.3d at 198; *Hachamovitch*, 159 F.3d at 694. The Second Circuit points out that "the Supreme Court has provided us with little guidance in determining which claims are 'inextricably intertwined' with a prior state court judgment and which are not." *Moccio*, 95 F.3d at 198. However, it is clear that, in this Circuit, "inextricably entwined" means at a minimum "that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ... subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Id.* at 199–200. Thus, "[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker–Feldman* will plainly bar the action. On the other hand, ... where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman.*" *Id.* at 198–99.

 The present case, like *Moccio*, "falls somewhere between these extremes." *Id.* at 199. As an initial matter,

**15.** There is complete diversity of the parties, and the amount in controversy exceeds $75,000.

I note that plaintiff's third and fourth claims are for declaratory relief, and are framed in the form of a general challenge to the procedural rules of New York's statutory bail forfeiture scheme; as such they are not barred under *Rooker–Feldman*. *See Feldman*, 460 U.S. at 482–86, 103 S.Ct. 1303; *Hachamovitch*, 159 F.3d at 694 (distinguishing between challenges to procedures as they exist and challenges to procedures as applied in a particular case). The gravamen of plaintiff's remaining claims, which address specific judgments of default already docketed in state court, is that the District Attorneys of Kings and Queens Counties violated plaintiff's rights to procedural due process by converting orders of forfeiture into judgments of forfeiture without first notifying plaintiff of their intent to do so. Plaintiff had a full and fair opportunity to litigate this due process claim through the procedures of New York Civil Procedure Law and Rules § 5015.[16] That statute allows a party to move for vacatur of a judgment on grounds that would certainly include plaintiff's argument that it was unconstitutionally entered without prior notice. *See* N.Y. C.P.L.R. § 5015(a) (excerpted *supra* n.14); *David D. Siegel, Practice Commentaries* C5015:1 ("Subdivision (a) lists the grounds for vacatur. Its five paragraphs cover almost all imaginable grounds, but, even so, the list is not exhaustive"); *see also Royster v. Consolidated Edison*, 114 Misc.2d 529, 452 N.Y.S.2d 146, 149 (N.Y.Civ.Ct.1982) (holding that the subparagraphs of § 5015(a) were not intended to impair the traditional power of the courts to grant relief from an order or judgment in the interests of justice).[17] It also allows a moving party to obtain restitution if successful in obtaining vacatur. N.Y.C.P.L.R. § 5015(d). Furthermore, New York courts have the "inherent power to vacate, set aside or modify [their] judgments and orders in [their] discretion and in the interests of justice." *People v. Varela*, 124 Misc.2d 992, 479 N.Y.S.2d 116, 119 (Sup. Ct.1984). Under these facts, plaintiff had a full and fair opportunity to litigate its due process claims.

The recent Second Circuit case of *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002), is illustrative. In *Kropelnicki*, a putative debtor brought an action under state and federal consumer protection statutes to recover from the attorney of a creditor who she claimed fraudulently obtained a default judgment against her, af-

---

**16.** I find plaintiff's argument—that a motion under § 5015 begins a new action under New York practice and, therefore, not a part of the same "proceeding" for purposes of the "inextricably entwined" test—to be of no practical consequence. Furthermore, because I find C.P.L.R. § 5015 provides plaintiff a full and fair opportunity to litigate its due process claim, I need not and do not consider whether N.Y.C.P.L. § 540.30, which sets forth procedures for remission of forfeiture, also provides such a full and fair opportunity.

**17.** I note that the courts that issued the judgments, and which could be petitioned to vacate them under § 5015, are courts of general jurisdiction. *N.Y. Const.* art. 6, § 7a ("The supreme court shall have general original jurisdiction in law and equity.... In the city of New York, it shall have exclusive jurisdiction over crimes prosecuted by indictment...."). Plaintiff has not suggested that the state courts would not or could not hear its due process claims on a motion to vacate under § 5015. The jurisdiction of the relevant state court has been deemed significant by the Second Circuit when deciding whether a plaintiff had a full and fair opportunity to litigate its claims in state court for purposes of the "inextricably entwined" test. *See, e.g., King v. State Education Dep't*, 182 F.3d 162, 163 (2d Cir.1999) (holding that *Rooker–Feldman* did not bar plaintiff's claims under the Individuals with Disabilities Education Act because the prior state court proceeding being challenged arose in Family Court, which had limited jurisdiction and thus could not consider plaintiff's federal claims).

ter having represented to the debtor's attorney that she (the creditor's attorney) would not advance the underlying state collection litigation without first contacting the debtor's attorney. *Kropelnicki,* 290 F.3d at 122. Plaintiff claimed that she had no notice of the collection proceedings— other than the writ, summons, and complaint—until receiving a letter from defendant notifying her that a default judgment had been entered. *Id.* at 124. Connecticut law provided four months from the date of judgment for a party to petition the court to open a default judgment for cause and allowed any judgment obtained by fraud to be opened at anytime. *Id.* at 129. Plaintiff had sent a letter requesting that the state court open the default judgment against her, but no information regarding the resolution of that petition was before the Second Circuit when it rendered its opinion. *Id.* The Second Circuit held that the provisions of Connecticut law allowing plaintiff to petition the state court to open the default judgment against her afforded her a full and fair opportunity to raise her claims in state court. *Id.*

■ Analogy to the facts of the present case is compelling. The primary salient distinction—the fact that plaintiff in the present case did not actually seek relief from the judgments of forfeiture pursuant to § 5015—is of no significance. The court in *Kropelnicki* had no information concerning any decision by the state court on the motion to open the judgment at issue in that case; the mere statutory avenue for a petition to open the judgment was deemed sufficient to provide an opportunity to raise the claims asserted in federal court and, thus, bar the district court from hearing those claims. Given the fact that New York statutory law allows plaintiff to bring its due process claims to the attention of the state court, I conclude that plaintiff had a full and fair opportunity to litigate those claims and that, therefore, the claims are "inextricably entwined" with the challenged state court judgments. Accordingly, plaintiff's first, second, fifth, sixth, seventh, eighth, ninth, and tenth claims for relief are jurisdictionally barred under the *Rooker–Feldman* doctrine.[18]

18. Even if they were not precluded, I would be unable to conclude that this Court has jurisdiction to consider these claims. I find it significant that plaintiff does not ask the Court to enjoin defendants from attempting to enforce the judgments at issue in these claims; rather, it asks that the Court declare those specific judgments void as unconstitutional, vacate the judgments, and order restitution of amounts paid in satisfaction thereof on grounds that defendants obtained them in violation of plaintiff's constitutional rights. On its face, then, the relief plaintiff requests is precisely that which would be granted by an appellate court and runs afoul of *Rooker–Feldman's* admonition that district courts may not exercise jurisdiction in a way that results in "reversal or modification of a state court judgment." *Hachamovitch,* 159 F.3d at 693; see also *Rooker,* 263 U.S. at 416, 44 S.Ct. 149 ("[N]o court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment for errors .... To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.") (internal citations omitted); *Kropelnicki,* 290 F.3d at 129 ("Moreover, if adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment."). Plaintiff has cited no authority establishing this Court's power to grant the relief it seeks, and the policies underlying the *Rooker–Feldman* doctrine seem clearly to preclude such relief:

[T]he doctrine stems from recognition that (1) state courts are just as obligated and competent as federal courts to decide federal constitutional questions, (2) a path is available through the state appellate system to the Supreme Court, and that (3) waste of judicial resources and unnecessary friction between state and federal courts might ensue if a federal district court intervened to overrule a state court decision.

Plaintiff raises two arguments in support of this Court's jurisdiction, neither of which are persuasive. First, it argues that *Rooker–Feldman* does not bar jurisdiction over claims that may affect a state court judgment, only those that seek to review a state court judgment. This distinction misstates the law and, in any event, is of no help to plaintiff, since what plaintiff seeks in all but its third and fourth claims is precisely a review of specific state court judgments. *See supra* n. 18. Plaintiff cites three recent district court cases in support of this argument, none of which are apposite. In *W.J.F. Realty Corp. v. Town of Southampton*, 220 F.Supp.2d 140 (E.D.N.Y.2002), a takings case, plaintiff had explicitly reserved the federal questions it asserted pursuant to *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and the state court had honored plaintiff's reservation; the district court concluded on these facts that plaintiff's claims had not been "actually litigated" and were not "inextricably entwined" with the state court judgments at issue. *W.J.F. Realty Corp.*, 220 F.Supp.2d at 150. Here, in contrast, plaintiff did not reserve any issues for federal adjudication; it did not even attempt to assert any claims in state court, but rather asked this Court to review the state court judgments in the first instance. *People United for Children, Inc. v. City of New York*, 108 F.Supp.2d 275 (S.D.N.Y.2000) is also distinguishable because in that case the state court judgment at issue arose in family court, a court of limited jurisdiction which could not have granted all the relief plaintiff sought in federal court. *People United For Children*, 108 F.Supp.2d at 286–87. As noted above, that is not the case here. *See supra* n. 17. Finally, plaintiff cites *Doe v. Pataki*, 3 F.Supp.2d 456 (S.D.N.Y.1998). However, in that case the district court found that plaintiffs did not have a full and fair opportunity to present their claims to the state court; indeed, state law provided no avenue at all for adjudication of plaintiff's challenges to judicial determination of their sex offender's risk assessment. *Doe*, 3 F.Supp.2d at 478. In contrast, I find that plaintiff in the present case has an opportunity to present its claims to the state courts. Plaintiff's attempt to establish a novel dichotomous interpretation of the *Rooker–Feldman* doctrine is simply not supported by its cited cases.

■ Second, plaintiff argues that its claims are not "inextricably entwined" with the state court judgments it seeks to vacate because it had no opportunity to raise its due process claim below prior to entry of the complained-of judgments. As discussed above, C.P.L.R. § 5015 provided plaintiff an ample opportunity to present its claims before the state courts that issued the judgments plaintiff now asks this Court to vacate and to receive precisely the relief it requests here. The fact that it could not present these claims prior to entry of judgment is of no importance in the "inextricably entwined" analysis. *See Kropelnicki*, 290 F.3d at 129.

For the foregoing reasons, plaintiff's first, second, fifth, sixth, seventh, eighth,

*Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (internal citations omitted). Thus, even if preclusion would not bar plaintiff's claims, this appears to be one of those cases envisioned by the Second Circuit in *Hachamovitch*, in which the relief requested challenges the Supreme Court's vision of comity, but preclusion might not apply. *Hachamovitch*, 159 F.3d at 696 n. 3.

ninth, and tenth claims are dismissed without prejudice for lack of subject matter jurisdiction.

### Abstention: Younger

 "[F]ederal courts have an unflagging obligation to adjudicate cases brought within their jurisdiction. It is now black-letter law that abstention...is the narrow exception, not the rule." *CECOS Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir.1990). "To justify a refusal to assume jurisdiction on *Younger* grounds, a district court must answer three questions affirmatively: (1) is there an ongoing state proceeding; (2) is an important state interest implicated; (3) does the plaintiff have an avenue open for review of constitutional claims in the state court?" *Id.*

 Turning to the first question, "[a] federal court need not stay its jurisdictional hand when there is no state action pending at the time the federal suit is filed, even if there is a substantial likelihood that a state proceeding will be instituted in the future to vindicate the state's interests." *Id.* at 72. Defendants argue that there is an ongoing proceeding in the present case because "at any given moment, and surely during the course of these federal court proceedings, a bond forfeiture proceeding is ongoing in New York State." (Defts'. Mem. L. Supp. Summ. J. Under *Rooker–Feldman* at 18.) Defendants miss the point of the first prong of the *Younger* analysis. The question is not whether there is some proceeding pending in state court that may implicate the same interests as the one from which abstention is demanded; rather, the requirement is of a parallel proceeding, pending at the time the federal court action was filed, in which the plaintiff may raise and have adjudicated the same claims it seeks to press in federal court and obtain the same relief. To hold that this Court could not exercise its jurisdiction to issue a declaratory judgment to the effect that a state enforcement scheme was unconstitutional simply because that scheme was in regular use would be to eviscerate the federal courts' power and responsibility to remedy state encroachments on federal rights and would allow the states to thwart individuals' ability to seek vindication of their federal rights against the states in the federal courts by the simple act of regularly violating those rights. *Younger* does not demand this kind of deference to state procedures. Defendants have offered no other proof of a pending state proceeding that would require *Younger* abstention.

For these reasons, although the second and third prongs of the *Younger* analysis appear to be satisfied in the present case, I find that abstention under *Younger* is not warranted. Accordingly, I have no occasion to consider plaintiff's argument that abstention has been waived.

### Standing

 In response to this Court's instructions upon denial of the first round of summary judgment motions in this case, plaintiff has offered three grounds on which this Court might find that it has a protected property interest requiring due process. First, plaintiff argues that a lien against real property implicates constitutional due process protections. As a general matter, this is indisputable. *See Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). However, plaintiff admits that it owns no real property in Kings or Queens Counties and, thus, that it has not suffered any attachment of liens as a result of the judgments of forfeiture entered against it. Therefore, plaintiff has not suffered any actual injury as a result of the lien provision of C.P.L. § 540.10(3) sufficient to confer

standing to bring the present action. *See Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ("The 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 563, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (same). Accordingly, plaintiff's claims for relief based on the lien provision of C.P.L. § 540.10(3) do not present a cognizable case or controversy under Article III of the Constitution.

■ Plaintiff's two remaining claimed injuries arise from its obligation to make payment on forfeited bail. In particular, plaintiff claims that it holds funds sufficient to satisfy forfeiture judgments against it in reserve, depriving it of the use of those funds in violation of its property rights. Plaintiff also claims that its failure to pay judgments of forfeiture places its state insurance license—in which it claims a property interest—in jeopardy. In support of the latter contention, plaintiff points out that defendants sought to persuade the New York Department of Insurance to bar plaintiff from writing bail bonds as punishment for its failure to pay judgments of forfeiture, compelling plaintiff to forego challenges to judgments of forfeiture other than those raised in the complaint. I need not decide, however, whether these asserted property interests are sufficient to satisfy the injury-in-fact test, because such injuries, even if they exist, are not "fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Under New York law, bail is forfeited and the surety's obligation to pay arises upon notation of a defendant's nonappearance by the state court on its minutes. *See* N.Y.C.P.L. § 540.10(1); *People v. Ben-*nett, 136 N.Y. 482, 487, 32 N.E. 1044 (1893) (holding that forfeiture of bail is complete when the fact of nonappearance is entered on the record; surety is liable even though formal judgment has not yet been entered); *People v. Midland Ins. Co.,* 97 Misc.2d 341, 343, 411 N.Y.S.2d 521 (1978) (holding that surety's liability for amount of bail accrues when principal's nonappearance is noted on the court's minutes; no formal judgment is necessary to fix the surety's obligation). The district attorneys' subsequent filing of an order of forfeiture within the specified time period in order to obtain a judgment does not impose any additional liability on the surety; it is merely a condition precedent to recovery. *People v. Schonfeld,* 74 N.Y.2d 324, 547 N.Y.S.2d 266, 546 N.E.2d 395, 397–98 (1989) (explaining that the district attorney's failure to file timely does not alter the substantive obligation of the surety, but merely permanently suspends the remedy for enforcement of that obligation). Therefore, any injury to or burden on a surety's property occasioned by bail forfeiture proceedings, other than the imposition of a lien on real property under § 540.30(3), occurs as a matter of law at the proceeding in which its principal's nonappearance is noted. Plaintiff does not and cannot claim that it has constitutionally insufficient notice of such proceedings. As such, the injuries of which plaintiff complains are not fairly traceable to the actions or procedures it seeks to declare unconstitutional, and plaintiff lacks standing to bring the present action. *Allen,* 468 U.S. at 751, 104 S.Ct. 3315.

In sum, the present action does not present a case or controversy cognizable under Article III. Plaintiff claims that C.P.L. Art. 540 is unconstitutional because it does not require the district attorney or the court to give actual notice to the surety before entering a judgment of forfeiture of

bail. Plaintiff argues that other states' notice and hearing provisions [19] satisfy due process by following Federal Rule of Criminal Procedure 46, which requires that notice be sent to the surety after bail is forfeited and before judgment is entered.[20] Plaintiff also argues that in the majority of states sureties are entitled to pre-judgment notice or, at least, receive pre-judgment notice in practice.[21] Defendants refer the court to the specific language of § 540 and claim that the defendant district attorneys provide written notice of judgment of forfeiture and a demand for payment to the surety.[22] As none of these arguments address injuries to any constitutionally protected property interest, the present case amounts to nothing more than a policy dispute between the State of New York and a major supplier of bail

bonds over who will bear the costs of monitoring the status of the supplier's contingent liabilities. Understandably, plaintiff would like the state to assume its monitoring costs, but that desire does not rise to the level of a constitutionally protected interest.[23] Furthermore, in this case the market seems particularly well equipped to provide the monitoring function plaintiff seeks, in that the retailers through which plaintiff distributes its bail bonds are in a position to follow individual bail forfeiture proceedings and pass the cost of doing so on to bond purchasers. The fact that plaintiff would rather increase its profits by compelling the state to provide this service for free does not create a case or controversy under Article III, where no constitutionally protected property interests are at stake.

19. Specifically, plaintiff states that Delaware, the District of Columbia, Kansas, Missouri, Nebraska, New Jersey, North Carolina, North Dakota, Rhode Island, South Dakota, Wisconsin, and Wyoming follow the procedures set forth in Fed. R.Crim. Pro. 46.

20. Rule 46 states in pertinent part:

When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon. By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the obligors to their last known addresses.
Fed.R.Crim.P. 46(e)(3).

21. Plaintiff claims that sureties are entitled to pre-judgment notice in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine Maryland, Michigan, Mississippi, Missouri, Montana, Nebraska,

Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming. According to plaintiff, Massachusetts, Minnesota, and Washington provide pre-judgment notice in practice.

Defendants dispute plaintiff's characterization of the aforementioned states' bail provisions, arguing that the statutes cited by plaintiff are not as definitive as plaintiff suggests.

22. Plaintiff admits that defendant district attorneys generally provide post-judgment notice within thirty days after entry of judgment. According to plaintiff, however, the defendants have at times failed to give notice for several months and, on occasion, failed to give notice until over a year after entry of judgment.

23. Alternatively, plaintiff may wish to leverage its capital by manipulating its reserves to take advantage of the relative timing of notations of default, orders of forfeiture, and entry of judgment of forfeiture; however, as discussed above, only the first event is relevant to the imposition of plaintiff's obligation to pay forfeited bail under New York law.

### Defendants' Counterclaims

■ Defendants have requested summary judgment on its counterclaims. Having held that plaintiff's claims for declaratory judgment must be dismissed for lack of standing and subject matter jurisdiction, I find that defendants' counterclaim for declaratory relief does not present a "case of actual controversy" ripe for consideration by this Court. *See* 28 U.S.C. § 2201; *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In particular, the hardship to defendants from withholding consideration of its claims is nil, since the statutes in question are not in any immediate danger of being declared unconstitutional and defendants are not in danger of being enjoined from acting under their authority. Accordingly, I dismiss defendant's first counterclaim on ripeness grounds.

■ Defendants' second counterclaim in essence seeks affirmance of state court judgments of forfeiture. For the same reasons given in my discussion of the *Rooker–Feldman* doctrine above, this claim must be dismissed for lack of subject matter jurisdiction.

■ Defendants' third, fourth, fifth, and sixth claims seek damages for plaintiff's alleged breach of its state law statutory and contractual duties in that it failed to produce its bonded principals or to pay the judgments of forfeiture. Defendants have already obtained judgments of forfeiture against plaintiff on these very grounds in state court. Under the New York doctrine of double recovery, defendants are precluded from bringing claims seeking a second recovery for the same injury. *Zarcone v. Perry,* 78 A.D.2d 70, 434 N.Y.S.2d 437, 443–44 (App.Div.1980), *aff'd,* 54 N.Y.2d 1028 (1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2248, 72 L.Ed.2d 855 (1982). Accordingly, these counterclaims are dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, plaintiff's first, second, fifth, sixth, seventh, eighth, ninth, and tenth claims for relief are dismissed without prejudice for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine. Defendants' motion for *Younger* abstention is denied. Plaintiff's third and fourth claims for relief are dismissed without prejudice for lack of standing. Defendants' first counterclaim is dismissed without prejudice for lack of ripeness. Defendants' second counterclaim is dismissed without prejudice for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine. Defendants' third, fourth, fifth, and sixth counterclaims are dismissed with prejudice under the doctrine of double recovery. I have no occasion to consider defendants' motion to amend the answer.

The Clerk is directed to enter judgment dismissing the complaint and to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.